In The

# United States Court of Appeals

### For The Eighth Circuit

# SARAH MCIVOR,

*Plaintiff – Appellant,*

**v.**

# CREDIT CONTROL SERVICES, INC., DOING BUSINESS AS CREDIT COLLECTION SERVICES,

*Defendant – Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

———————————

## BRIEF OF APPELLANT

———————————

Richard J. Rubin
ATTORNEY AT LAW
1300 Canyon Road
Santa Fe, New Mexico 87501
(505) 983-4418

Jonathan L. R. Drewes
Bennett Hartz
DREWES LAW
1516 West Lake Street, Suite 300
Minneapolis, Minnesota 55408
(612) 285-3052

*Counsel for Appellant*

Joanne S. Faulkner
ATTORNEY AT LAW
123 Avon Street
New Haven, Connecticut 06511
(203) 772-0395

Deepak Gupta
GUPTA BECK PLLC
1625 Massachusetts Avenue, NW
Washington, DC 20036
(202) 470-3826

*Counsel for Appellant*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

SUMMARY OF THE CASE........................................................................ 1

JURISDICTIONAL STATEMENT ............................................................. 2

STATEMENT OF THE ISSUES ................................................................. 2

STATEMENT OF THE CASE ..................................................................... 3

    A.    Introduction ................................................................... 3

    B.    Statutory Background.................................................... 7

    C.    Credit Reporting Terminology ..................................... 9

    D.    Factual Background .................................................... 10

    E.    The District Court's Decision ..................................... 11

SUMMARY OF THE ARGUMENT ......................................................... 13

STANDARD OF REVIEW ........................................................................ 17

ARGUMENT .............................................................................................. 17

    I.    A DEBT COLLECTOR WHO REPORTS A DEBT TO A CREDIT BUREAU AND VERIFIES IT ONCE DISPUTED IS ENGAGED IN ACTIVITY "IN CONNECTION WITH THE COLLECTION OF ANY DEBT"..................................................................... 17

        A.    A Debt Collector Reporting a Debt to a Credit Bureau Is Engaged in Debt Collection .......................... 17

Appellate Case: 14-1164   Page: 2   Date Filed: 04/08/2014   Entry ID: 4142086

B.     The District Court Erred By Concluding That Credit Control Was Not Acting in Connection With the Collection of the Debt When It Verified to TransUnion That the Debt Was Owing ...................... 19

II.     CREDIT CONTROL'S FAILURE TO DISCLOSE THAT IT KNEW THAT THE DEBT WAS DISPUTED WAS A VIOLATION OF 15 U.S.C. § 1692e(8) ................... 25

A.     Section 1692e(8) Unambiguously Required Credit Control to Disclose the Debt's Known Disputed Status to TransUnion ...................................................... 25

B.     *Wilhelm* Required the District Court to Sustain the Section 1692e(8) Claim Regardless Whether It Believed the Failure to Disclose Here Was Sufficiently Important or Material ................................. 26

C.     Ms. McIvor Properly Alleged That Credit Control's Failure to Disclose the Debt's Disputed Status Adversely, Deceptively, and Materially Altered Her Credit Report and its Effect ...................... 31

CONCLUSION ............................................................................ 43

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

Appellate Case: 14-1164    Page: 3    Date Filed: 04/08/2014   Entry ID: 4142086

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen ex rel. Martin v. LaSalle Bank*, *N.A.*,
    629 F.3d 364 (3d Cir. 2011) ............................................................... 22

*Blanks v. Ford Motor Credit*,
    2005 WL 43981 (N.D. Tex. Jan. 7, 2005).......................................... 23

*Brady v. Credit Recovery Co.*, *Inc.*,
    160 F.3d 64 (1st Cir. 1998) ............................................................... 25

*Brim v. Midland Credit Management*, *Inc.*,
    795 F. Supp. 2d 1255 (N.D. Ala. 2011) ............................................. 37

*Chiang v. MBNA*,
    620 F.3d 30 (1st Cir. 2010) ............................................................... 38

*Creighton v. Emporia Credit Service*, *Inc.*,
    981 F. Supp. 411 (E.D. Va. 1997) .................................................... 18

*Donohue v. Quick Collect*, *Inc.*,
    592 F.3d 1027 (9th Cir. 2010).......................................................... 30

*Edeh v. Midland Credit Mgmt.*, *Inc.*,
    748 F. Supp. 2d 1030 (D. Minn. 2010), *aff'd on other grounds*,
    413 Fed. Appx. 925 (8th Cir. 2011) ...................................... 18, 23, 24

*Ford Motor Credit Company v. Milhollin*,
    444 U.S. 555 (1980) ......................................................................... 30

*Fuges v. Southwest Financial Services*, *Ltd.*,
    707 F.3d 241 (3d Cir. 2012) ............................................................... 9

*Gburek v. Litton Loan Servicing LP*,
    614 F.3d 380 (7th Cir. 2010)......................................................... 2, 21

Appellate Case: 14-1164    Page: 4    Date Filed: 04/08/2014 Entry ID: 4142086

*Gonzales v. Arrow Financial Services*, LLC,
   660 F.3d 1055 (9th Cir. 2011) ............................................................ 18

*Grden v. Leikin Ingber & Winters PC*,
   643 F.3d 169 (6th Cir. 2011) .................................................. 2, 14, 21

*Henson v. CSC Credit Services*,
   29 F.3d 280 (7th Cir. 1994) ................................................................ 40

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999) .......................................................................... 20

*In re Sommersdorf*,
   139 B.R. 700 (Bankr. S.D. Ohio 1991) ............................................... 18

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*,
   559 U.S. 573 (2010) ............................................................................ 8

*Lower Brule Sioux Tribe of South Dakota v. U.S.*,
   712 F.2d 349 (8th Cir. 1983) .............................................................. 30

*McKenzie v. E.A. Uffman and Associates, Inc.*,
   119 F.3d 358 (5th Cir. 1997) .......................................................... 18-19

*Mourning v. Family Publication Serv., Inc.*,
   411 U.S. 356 (1973) .......................................................................... 40

*National Car Rental System, Inc. v. Computer Associates Intern., Inc.*,
   991 F.2d 426 (8th Cir. 1993) .............................................................. 17

*Rivera v. Bank One*,
   145 F.R.D. 614 (D.P.R. 1993) ............................................................ 18

*Romine v. Diversified Collection Services, Inc.*,
   155 F.3d 1142 (9th Cir. 1998) ............................................................ 22

*Saunders v. Ameritrust of Cincinnati*,
   87 F. Supp. 896 (D. Ohio 1984) ........................................................ 38

Appellate Case: 14-1164    Page: 5    Date Filed: 04/08/2014 Entry ID: 4142086

*Saunders v. Branch Banking and Trust Co. of Virginia*,
526 F.3d 142 (4th Cir. 2008) ................................................ 3, 6, 32, 33

*Schlosser v. Fairbanks Capital Corp.*,
323 F.3d 534 (7th Cir. 2003) ............................................. 36

*Seamans v. Temple University*,
— F.3d —, 2014 WL 658401 (3d Cir. 2014) ................................ 6, 42

*Simon v. FIA Card Services, N.A.*,
732 F.3d 259 (3d Cir. 2013) ............................................. 22

*Sloane v. Equifax Information Services, LLC*,
510 F.3d 495 (4th Cir. 2007) ............................................. 9

*Sullivan v. Equifax*,
2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ..................................... 23

*Till v. SCS Credit Corp.*,
541 U.S. 465 (2004) .......................................................... 40

*Trans Union Corp. v. F.T.C.*,
245 F.3d 809 (D.C. Cir. 2001) ............................................. 9

*United States v. Wells*,
519 U.S. 482 (1997) .......................................................... 30

*Warren v. Sessoms & Rogers*,
676 F.3d 365 (4th Cir. 2012) ............................................. 3, 28, 29, 30

*Wesley v. Cavalry Investments, LLC*,
2006 WL 1285020 (E.D. Pa. May 9, 2006) ..................................... 32

*Wilhelm v. Credico, Inc.*,
519 F.3d 416 (8th Cir. 2008) ..................................... *passim*

*Xiong v. State*,
195 F.3d 424 (8th Cir. 1999) ............................................. 26

Appellate Case: 14-1164     Page: 6     Date Filed: 04/08/2014 Entry ID: 4142086

# STATUTES

## Truth in Lending Act

15 U.S.C. §§ 1601-1667e.........................................................................37

15 U.S.C. § 1640......................................................................................38

15 U.S.C. § 1666......................................................................................38

15 U.S.C. § 1666a....................................................................................38

15 U.S.C. § 1666a(a)...............................................................................38

15 U.S.C. § 1666a(b)...............................................................................38

## Fair Credit Reporting Act

15 U.S.C. § 1681......................................................................................40

15 U.S.C. § 1681(a)(1).............................................................................39

15 U.S.C. § 1681(a)(4).............................................................................38

15 U.S.C. § 1681a(d).................................................................................9

15 U.S.C. § 1681a(f).................................................................................9

15 U.S.C. § 1681c(f).......................................................................3, 39, 41

15 U.S.C. § 1681g(f)(2)(A)(i)..................................................................10

15 U.S.C. § 1681i(a)(2) ............................................................................4

15 U.S.C. § 1681i(a)(5) ..........................................................................20

15 U.S.C. § 1681i(a)(5)(A)......................................................................41

15 U.S.C. § 1681i(a)(5)(D)......................................................................42

Appellate Case: 14-1164    Page: 7    Date Filed: 04/08/2014 Entry ID: 4142086

15 U.S.C. § 1681s-2(a) ........................................................................ 9

15 U.S.C. § 1681s-2(a)(3) ................................................................. 34

15 U.S.C. § 1681s-2(b) ...................................................................... 42

15 U.S.C. § 1681s-2(b)(1)(D) ........................................................... 42

15 U.S.C. § 1681s-2(c) ...................................................................... 35

15 U.S.C. § 1681s-2(d) ...................................................................... 35

**Fair Debt Collection Practices Act**

15 U.S.C. §§ 1692-1692p .................................................................... 2

15 U.S.C. § 1692(a) .............................................................................. 7

15 U.S.C. § 1692(e) .............................................................................. 8

15 U.S.C. § 1692a(2) .......................................................................... 22

15 U.S.C. § 1692a(6) .......................................................................... 22

15 U.S.C. § 1692c ............................................................................... 23

15 U.S.C. § 1692c(b) ....................................................................... 2, 19

15 U.S.C. § 1692d ............................................................................... 23

15 U.S.C. § 1692d(3) .......................................................................... 19

15 U.S.C. § 1692e ....................................................................... *passim*

15 U.S.C. § 1692e(11) ........................................................................ 28

15 U.S.C. § 1692e(16) ................................................................... 18, 19

15 U.S.C. § 1692e(8) ................................................................... *passim*

Appellate Case: 14-1164     Page: 8     Date Filed: 04/08/2014 Entry ID: 4142086

15 U.S.C. § 1692g(a) ..................................................................... 23

15 U.S.C. § 1692g(b) ..................................................................... 24

15 U.S.C. § 1692k(d) ....................................................................... 2

**Jurisdictional Statutes**

28 U.S.C. § 1291............................................................................... 2

28 U.S.C. § 1331............................................................................... 2

**RULE**

Fed. R. Civ. P. 12 ..................................................................... 31, 33

**REGULATIONS**

12 C.F.R. § 1002.2(p) ................................................................... 10

12 C.F.R. § 1002.2(t) .................................................................... 41

**OTHER AUTHORITIES**

Board of Governors of the Federal Reserve System, *Credit Reports and Credit Scores*, *available at* http://federalreserve.gov/creditreports/ ..... 10

Consumer Financial Protection Bureau, *Key Dimensions and Processes in the U.S. Credit Reporting System: A Review Of How The Nation's Largest Credit Bureaus Manage Consumer Data*, *available at* www.consumerfinance.gov/reports/key-dimensions-and-processes-in-the-u-s-credit-reporting-system................................................................. 37

Federal Trade Commission and Federal Reserve Board, *Report To Congress On The Fair Credit Reporting Act Dispute Resolution Process* (2006), *available at* http://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-and-board-governors-federal-reserve-system-report-congress-fair-credit/p044808fcradisputeprocessreporttocongress.pdf......... 32

Appellate Case: 14-1164    Page: 9    Date Filed: 04/08/2014 Entry ID: 4142086

Federal Trade Commission Staff Commentary on the Fair Debt
Collection Practices Act, 53 Fed. Reg. 50097-02
(Dec. 13, 1988) ..................................................................... 8-9, 27

Federal Trade Commission Staff Opinion Letter, 1997 WL 33791232
(F.T.C. Dec. 23, 1997) ............................................................ 17-18

S. Rep. 95–382 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695 ................... 36

Webster's New Universal Unabridged Dictionary (2d ed. 2003) ............... 20

Appellate Case: 14-1164   Page: 10   Date Filed: 04/08/2014 Entry ID: 4142086

## SUMMARY OF THE CASE

The Fair Debt Collection Practices Act (FDCPA) prohibits a debt collector, when reporting information to a credit bureau, from "omit[ting] a piece of information that is always material, namely, that the consumer has disputed a particular debt." *Wilhelm v. Credico*, *Inc*., 519 F.3d 416, 418 (8th Cir. 2008). Sarah McIvor sued Credit Control Services because it violated this directive: in responding to a request for information from the credit bureau TransUnion, Credit Control omitted the fact that Ms. McIvor had disputed the particular debt at issue. That omission was a *per se* violation of a specific FDCPA provision, 15 U.S.C. § 1692e(8), which imposes liability for the "failure to communicate that a disputed debt is disputed."

Nevertheless, the court below dismissed her claim because it concluded that (1) Credit Control was not acting "in connection with the collection of a debt" when it verified the debt to TransUnion; and (2) Credit Control's action did not "exemplif[y]" the unlawful "practices that Congress had in mind when it enacted the FDCPA," so the violation was not "material." Ms. McIvor requests 20 minutes of oral argument because the district court's decision abandons the language of the statute, rejects this Court's teaching in *Wilhelm*, and will seriously undermine FDCPA compliance if it is permitted to stand.

1

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Sarah McIvor sued Defendant-Appellee Credit Control Services, Inc., under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p. Appx. 8. The district court had jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Ms. McIvor timely filed her notice of appeal on January 16, 2014 (Doc. 53) from the district court's December 17, 2013 order granting Credit Control's motion for judgment on the pleadings (Appx. 18) and from the judgment entered on December 17, 2013 (Appx. 24). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

(1) When a debt collector communicates with a credit bureau to verify a disputed debt that it is collecting from a consumer, is that debt collector acting "in connection with the collection of" that debt, thus subjecting it to the requirements of the FDCPA, 15 U.S.C. § 1692e(8)?

Apposite cases are: *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010); *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011).

Apposite statutory provisions are: 15 U.S.C. §§ 1692c(b) and 1692e(8).

Appellate Case: 14-1164    Page: 12    Date Filed: 04/08/2014 Entry ID: 4142086

(2) May a federal court forgive a debt collector's failure to comply with 15 U.S.C. § 1692e(8) — which establishes a *per se* FDCPA violation when a debt collector's communication with a credit bureau "fail[s] to communicate that a disputed debt is disputed" — because the court perceives that providing the disclosure is "immaterial" since the credit bureau already knows from the consumer that she disputes the debt?

Apposite cases are: *Wilhelm v. Credico*, *Inc*., 519 F.3d 416 (8th Cir. 2008); *Saunders v. Branch Banking and Trust Co. of Virginia*, 526 F.3d 142 (4th Cir. 2008); *Warren v. Sessoms & Rogers*, 676 F.3d 365 (4th Cir. 2012).

Apposite statutory provisions are: 15 U.S.C. § 1692e(8) and 15 U.S.C. § 1681c(f).

## STATEMENT OF THE CASE

### A.     Introduction

One way in which the Fair Debt Collection Practices Act regulates debt collectors is through a set of rules that govern the reporting of information to credit bureaus. Recognizing the power of credit reporting as a debt collection tool, Congress sought to prevent debt collectors from misusing the credit reporting system to extract payment from vulnerable consumers. It did so by enacting a specific credit reporting protocol that imposes liability for the "failure to communicate that a disputed debt is

3

disputed." 15 U.S.C. § 1692e(8). As this Court has recognized, this protocol means that a debt collector "must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." *Wilhelm*, 519 F.3d at 418.

Sarah McIvor was subjected to such forbidden tactics by Credit Control while it was trying to collect a debt that Ms. McIvor no longer even owed. Credit Control had reported the debt to TransUnion, one of the "Big Three" national credit bureaus. Ms. McIvor did not owe the debt: she had already settled it with her creditor, Credit Control's client. But the erroneous debt was still showing up on her TransUnion credit report, so she disputed the information with TransUnion. TransUnion in turn notified Credit Control of Ms. McIvor's contention that the account was settled and requested that it investigate, as required by the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681i(a)(2). Credit Control responded to TransUnion by continuing to assert that the debt was past due and not paid. But it did more than make that assertion — it also failed to disclose to TransUnion that it *knew* that the debt was in fact disputed. That failure was in clear contravention of the FDCPA, which establishes a *per se* violation when a debt collector is communicating with a credit bureau: "the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

4

The lower court excused this violation. It thought that enforcing the statute was unimportant under the circumstances because "TransUnion already knew the debt was in dispute." Of course, a credit bureau is *always* aware that a consumer disputes the debt when it receives and processes the consumer's challenge to an item on her credit report. Even so, both the FDCPA and the FCRA mandate that the debt collector who furnished the challenged information confirm the dispute back to the credit bureau. There is good reason for this: echoing the dispute back triggers the credit bureau's specific FCRA obligation to note the account as disputed on all future credit reports. Doing so has a domino effect that, among other things, results in TransUnion eliminating all such disputed items from its calculation of a consumer's credit score. As a direct result of Credit Control's violation of § 1692e(8) here, TransUnion failed to note the debt's disputed status, and Ms. McIvor's credit score was consequently lower.

This crucial reporting obligation is not triggered when the *consumer* notifies the credit bureau of a dispute but only when the *furnisher* of the disputed information does so. The Third and Fourth Circuits have reaffirmed the importance of this fundamental distinction for the reporting obligations of a credit bureau (known formally as a consumer reporting agency (CRA)) and acknowledged the misconception into which the district court here

5

naturally was lured. As stated by the Third Circuit, "It may seem peculiar that FCRA compels a furnisher, who can only be formally notified of a dispute by a CRA, to then re-designate the account as disputed in its submission back to the same CRA, which of course already knows about the dispute, having been the initial recipient of notice from the consumer." *Seamans v. Temple University*, — F.3d —, 2014 WL 658401, at *10 n.11 (3d Cir. 2014). But that is what the FCRA requires as a predicate to correcting the consumer's credit report. *Id*. The Fourth Circuit reached the same conclusion when faced with a furnisher's argument that it need not comply with its statutory reporting obligation because the CRA already knew of the dispute from the consumer: "CRAs do not consider the furnisher's reporting of a dispute superfluous." *Saunders v. Branch Banking and Trust Co. of Virginia*, 526 F.3d 142, 150 (4th Cir. 2008).

The district court erred not only in believing that the § 1692e(8) dispute-reporting directive was unimportant but also in holding that Credit Control was not acting "in connection with the collection of" the debt when it communicated with TransUnion. Credit Control had only one objective at all times here: to collect Ms. McIvor's debt. The lower court's theory that Credit Control was not acting "in connection with the collection of" that

6

debt when it verified the debt with TransUnion and instructed that it remain on her credit report as a collection account is therefore groundless.

The court's second rationale — that Credit Control's failure to tell TransUnion that the debt was disputed was not "abusive…false or misleading" and thus was not "material" — amounts to judicial nullification of a disclosure protocol mandated by Congress. In our system, it is Congress — not a federal district judge — that decides what policies are sufficiently important that they should be enshrined in law. Compliance with an explicit statutory mandate is always required: it is, by definition, material. In any event, Credit Control's silence was in fact misleading and material here because it negatively impacted Ms. McIvor's TransUnion credit score and thus allowed Credit Control to continue to use its false credit reporting as a collection tool.

## B.    Statutory Background

Congress enacted the FDCPA in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," practices that Congress determined "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The FDCPA seeks to remedy these problems, both "to protect consumers against debt

7

collection abuses" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e); *see Jerman v. Carlisle*, *McNellie*, *Rini*, *Kramer & Ulrich*, *L.P.A.*, 559 U.S. 573, 577 (2010).

This case arises under a provision of the FDCPA that seeks to regulate false or misleading representations by debt collectors — specifically, in this case, the failure to convey the fact that a disputed debt has in fact been disputed:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ****
>
> **(8)** Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e(8).

The Federal Trade Commission's Staff Commentary on the FDCPA made clear that this § 1692e(8) obligation extends to a debt collector's failure to inform a credit bureau that a debt has been disputed:

> 1. Disputed debt. If a debt collector knows that a debt is disputed by the consumer, either from receipt of written notice (section 809) [15 U.S.C. § 1692g] or other means, and reports it to a credit bureau, he must report it as disputed.

8

53 Fed. Reg. 50097-02, 50106 (Dec. 13, 1988) (quoted in part with approval in *Wilhelm*, 519 F.3d at 418).

## C.  Credit Reporting Terminology

A "credit bureau" as used in regulatory, industry, and popular parlance refers to a "consumer reporting agency" (CRA), the term used in the FCRA to describe the entity "which, for monetary fees...regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). The "Big Three" national CRAs are Equifax, Experian, and TransUnion. *Sloane v. Equifax Information Services*, *LLC*, 510 F.3d 495, 505 (4th Cir. 2007).

An FCRA-defined "consumer report" [15 U.S.C. § 1681a(d)] is often referred to as a "credit report." *Fuges v. Southwest Financial Services*, *Ltd*., 707 F.3d 241, 246 n.7 (3d Cir. 2012).

"Furnisher" derives from the usage in the FCRA that describes the person who provides information to a CRA. *See e.g.* 15 U.S.C. § 1681s-2(a).

A "tradeline" is the industry term for the information that a furnisher reports to a CRA that then appears on the consumer's credit report. *See Trans Union Corp. v. F.T.C.*, 245 F.3d 809, 812 (D.C. Cir. 2001).

9

A "credit score" is defined in the FCRA as "a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default…" 15 U.S.C. § 1681g(f)(2)(A)(i); *see also* 12 C.F.R. § 1002.2(p) and Board of Governors of the Federal Reserve System, *Credit Reports and Credit Scores*, *available at* http://federalreserve.gov/creditreports/.

## D.    Factual Background

Sarah McIvor incurred an alleged debt of $242 to Progressive Insurance Company, which sent it for collection to Credit Control, a professional debt collector whose principal business is the collection of consumer debts. Appx. 10, 14, and 17. As part of its efforts to collect the debt from Ms. McIvor, Credit Control reported the debt to TransUnion as an "adverse account" "in collection." *Id.*

Ms. McIvor settled the debt with Progressive, but in April 2013 the debt was still being listed as owing on her TransUnion consumer report as the adverse collection account. *Id*. Accordingly, she disputed the tradeline directly with TransUnion. *Id.* Under procedures required by the FCRA, TransUnion then notified Credit Control, the furnisher of the challenged information, that Ms. McIvor claimed to have settled the matter with

10

Progressive so that Credit Control could investigate the accuracy of its information. Appx. 10. Credit Control responded by verifying that the debt was still owing and remained in collection but did not tell TransUnion that it knew the debt was disputed. Appx. 17. As a result of Credit Control's failure to inform TransUnion of the debt's disputed status, TransUnion did not designate the debt as disputed on Ms. McIvor's credit report, causing her actual damages and impairing her ability to obtain credit. Appx. 11.

### E.     The District Court's Decision

The district court granted Credit Control's motion for judgment on the pleadings (Doc. 38) and denied Ms. McIvor's motion for summary judgment (Doc. 32). Appx. 23.

The court first held that Credit Control's verification response to TransUnion was not a communication undertaken, in the language of § 1692e(8), "in connection with the collection of any debt." Appx. 21-22. In this regard the court equated an actual "prohibited attempt at debt collection" from another FDCPA subsection with the separate § 1692e standard applicable here that the activity need occur only "in connection with the collection of any debt." *Id.* The court did not acknowledge — let alone discuss — the unanimous body of federal appellate case law that explicitly rejects any notion that the § 1692e universe of activity taken "in connection

11

with the collection of any debt" requires an actual attempt to collect the debt and that instead applies the plain statutory language to require only "connected" activity that aids in the debt's ultimate collection. *Id.* Because it found that Credit Control's communication to TransUnion was not an actual "attempt at debt collection," the court then concluded: "Thus, the communication by CCS to TransUnion was not in connection with the collection of a debt under the FDCPA and judgment on the pleadings is warranted for this reason alone." Appx. 22.

The court next held that because "TransUnion already knew the debt was in dispute," "the communication at issue in no way exemplifies the abusive behavior or false or misleading practices that Congress had in mind when it enacted the FDCPA," and thus any resulting violation of § 1692e(8) was not "material." Appx. 22-23. Therefore, "for this additional reason, judgment on the pleadings is warranted." Appx. 23.

The court did acknowledge Ms. McIvor's reliance on this Court's opinion in *Wilhelm* that "if a debt collector knows that a debt is disputed by the consumer ... and reports it to a credit bureau, he must report is as disputed." Appx. 21. But the court did not otherwise discuss *Wilhelm*. In addition, although the court held that providing this § 1692e(8) disclosure was unnecessary and immaterial, it did not discuss Congress's purposes in

Appellate Case: 14-1164    Page: 22    Date Filed: 04/08/2014 Entry ID: 4142086

requiring information furnishers to disclose known disputed debts as disputed. The court therefore did not consider (1) whether those Congressional purposes would be achieved based on TransUnion's knowledge of the dispute gained from the consumer alone, (2) why *Wilhelm* stated that the dispute disclosure by the debt collector is "always material," or (3) the basis for Ms. McIvor's specific allegation that Credit Control's failure to designate the debt as disputed impaired her ability to obtain credit.

## SUMMARY OF THE ARGUMENT

The district court was wrong as a matter of law and fact when it concluded that Credit Control's communication with TransUnion did not occur "in connection with the collection of any debt." Every authority to consider the issue has concluded that a debt collector communicating about a past due debt to a credit bureau is engaged in debt collection; no authority other than the court below has ever held that any aspect of credit reporting by a debt collector is not undertaken "in connection with the collection of" the debt.

The court ruled without considering the legal standard to determine when a communication occurs "in connection with the collection of any debt," or even taking into account the ordinary and plain meaning of the phrase. Instead, notwithstanding that the single case on which it relied

13

implemented a *different* FDCPA provision concerning actual collection efforts, the court adopted that ruling — even though by its terms it is not applicable to the § 1692e "in connection with" phrasing.

Section 1692e requires no such direct collection efforts: the Circuits are in agreement that "for a communication to be in connection with the collection of a debt" within § 1692e, "an explicit demand for payment" is not a prerequisite; instead, any indirect collection effort that has as an "animating purpose… to induce payment by the debtor" or "that aims to make [an ultimate collection] attempt more likely to succeed…has the requisite connection." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). Credit Control had no purpose here other than collection. And at the pleading stage of the litigation, a conclusion as a matter of law that inducing payment was not at least one animating purpose of Credit Control's credit reporting certainly was precluded.

The lower court's second holding — that Credit Control's failure to disclose the disputed nature of the debt to TransUnion was not material and therefore not an actionable violation of the FDCPA because the credit bureau itself was not deceived — is wrong on every level. Congress mandated in parallel provisions of the FCRA and the FDCPA that furnishers must disclose to a credit bureau that they know that the information being

14

furnished is disputed. Only then must the credit bureau note that disputed status whenever it includes the information in a consumer report. The credit bureau must brand a tradeline as disputed only when the bureau is told of that status by the furnisher and not by the consumer.

A credit bureau's compliance with the mandate to mark a disputed tradeline as disputed then creates additional effects upon consumer finance systems. The most significant of those impacts here is Ms. McIvor's allegation, which the district court ignored, that Credit Control's § 1692e(8) violation impaired her ability to obtain credit: TransUnion removes from its credit scoring all tradelines designated by the furnisher as disputed, thus neutralizing the negative impact of the disputed tradeline and preventing the debt collector from using the credit report as a collection club. Therefore, because Credit Control did not comply with § 1692e(8) requiring it to disclose Ms. McIvor's dispute, TransUnion did not note the debt as disputed and continued to use the adverse tradeline as a negative in its credit scoring computation; accordingly, Credit Control was still able to use the adverse tradeline as a tool to pressure Ms. McIvor to pay.

Credit Control's noncompliance with its § 1692e(8) disclosure obligation was not only material but was an essential ploy to use credit reporting to elicit payment from Ms. McIvor or any other consumer who

15

claims it is collecting a settled or other disputed debt. By declining to comply with § 1692e(8), Credit Control made its credit reporting collection efforts here more forceful and effective. The lower court's ruling is not merely erroneous but ironically increases the efficacy of Credit Control's unlawful collection efforts and the materiality of the § 1692e(8) violation while claiming that it impacts neither.

The district court could not refuse to enforce § 1692e(8) as Congress wrote the provision. A court is not at liberty to create an exception to a statutorily required disclosure based on its own judgment of the disclosure's importance and materiality, as did the lower court here. Congress already determined that compliance is important, material, and mandatory by enacting the requirement. In addition, this Court in *Wilhelm* expressly precluded the possibility that a failure to provide the § 1692e(8) disclosure was not material or actionable when, in order to give effect to Congress's considered opinion, it stated that a debt collector who furnishes information about a consumer's debt to a CRA "must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." The lower court's obligation to follow both the plain statutory mandate and binding Circuit precedent establishes its error. The ruling below must be overturned.

16

## STANDARD OF REVIEW

This Court "review[s] a motion for judgment on the pleadings de novo. The standard is strict: judgment on the pleadings is not appropriate unless the moving party has clearly established that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law." *National Car Rental System*, *Inc. v. Computer Associates Intern.*, *Inc.*, 991 F.2d 426, 428 (8th Cir. 1993) (internal quotations and citations omitted). The Court "must accept as true all facts pled by the non-moving party, and grant all reasonable inferences from the pleadings in the non-moving party's favor." *Id.*

## ARGUMENT

I. **A DEBT COLLECTOR WHO REPORTS A DEBT TO A CREDIT BUREAU AND VERIFIES IT ONCE DISPUTED IS ENGAGED IN ACTIVITY "IN CONNECTION WITH THE COLLECTION OF ANY DEBT"**

A. **A Debt Collector Reporting a Debt to a Credit Bureau Is Engaged in Debt Collection**

All authorities agree that reporting a debt to a credit bureau is an activity done in furtherance of collecting the debt being reported. As the Federal Trade Commission has explained: "[W]e believe the reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls." Federal Trade

17

Commission Staff Opinion Letter, 1997 WL 33791232, at *1 (F.T.C. Dec. 23, 1997). Federal courts agree: "[P]lacing of a notation on an obligor's credit report…most certainly must be done in an effort to effect collection of the account." *In re Sommersdorf*, 139 B.R. 700 (Bankr. S.D. Ohio 1991); *accord*, *Edeh v. Midland Credit Mgmt.*, *Inc*., 748 F. Supp. 2d 1030 (D. Minn. 2010), *aff'd on other grounds*, 413 Fed. Appx. 925 (8th Cir. 2011) ("[T]hreatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver"). By all accounts, credit reporting is a "powerful tool designed, in part, to wrench compliance with payment terms from" debtors. *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993); *see e.g. Gonzales v. Arrow Financial Services*, *LLC*, 660 F.3d 1055, 1062-64 (9th Cir. 2011) (false threats to report the debt to a CRA violated the FDCPA); *Creighton v. Emporia Credit Service*, *Inc.*, 981 F. Supp. 411, 416 (E.D. Va. 1997) (same).

Congress also recognized that credit reporting is an aspect of debt collection when it enacted the FDCPA. For example, an FDCPA provision that acknowledges the power of credit reporting as a debt collection tool prohibits the use of any "false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by" the FCRA. 15 U.S.C. § 1692e(16); *see e.g. McKenzie v. E.A. Uffman*

18

*and Associates*, *Inc.*, 119 F.3d 358 (5th Cir. 1997) (collection agency violated § 1692e(16) by using the name "Collections Department, Credit Bureau of Baton Rouge," when it was neither operated or employed by a CRA but instead "licensed the use of the name…Undoubtedly, E.A. Uffman enjoys a competitive advantage over collection agencies with less imposing letterheads") (citations omitted).

Indeed, debt collectors would not even be allowed to report consumers' debts to a CRA but for the specific provisions in 15 U.S.C. § 1692c(b) and § 1692d(3) exempting credit reporting from the prohibitions against disclosing a debt to a third party and publishing debtors' identities. And of course, 15 U.S.C. § 1692e(8), the provision that Credit Control violated here, exists as its own testament to Congress's determination that a debt collector communicating with a CRA about a debt which it is collecting is engaged in debt collection activity that Congress deemed should be subject to its specific and precise rules. These portions of the FDCPA would not exist if credit reporting by debt collectors were not debt collection.

**B.    The District Court Erred By Concluding That Credit Control Was Not Acting in Connection With the Collection of the Debt When It Verified to TransUnion That the Debt Was Owing**

With the recognition that reporting a debt to a credit bureau is an act of debt collection comes the corollary that verifying the debt to the credit

19

bureau after the consumer has challenged its validity is activity undertaken "in connection with" its collection. The plain meaning of the plain statutory language leaves room for no other result.

Though the district court held otherwise, it made no attempt to ascertain that plain meaning, notwithstanding that such an inquiry is the first step to establish the meaning of a federal statute. *See e.g. Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute. And where the statutory language provides a clear answer, it ends there as well.") (citations and internal quotation marks omitted).

"Connection" is the state of being joined or linked. Webster's New Universal Unabridged Dictionary (2d ed. 2003). Even though Credit Control's verification communication with TransUnion involved no actual "attempt at debt collection" (Appx. 22), Credit Control's verification of the debt was linked with and joined to its singular purpose to collect that debt and enhance its ultimate success.

For example, if Credit Control had acknowledged Ms. McIvor's settlement with Progressive, TransUnion would have been required to "promptly" delete or modify the tradeline. 15 U.S.C. § 1681i(a)(5). Then the credit report would no longer be a collection device; instead, having

20

continued to claim that the debt remained owing, its verification became the linchpin to Credit Control's continued use of "the reporting mechanism as a tool to persuade consumers to pay." Accordingly, the plain statutory language shows that Credit Control's verification communication was undertaken "in connection with the collection of" Ms. McIvor's debt.

The unanimous judgment of the federal Circuit Courts reaches the same result. The federal judiciary has concluded that the FDCPA's "in connection with the collection of any debt" language means what it says and applies to both actual attempts at collection, such as an explicit demand for payment, as well as to other additional representations or means that aid such direct collection attempts. Specifically, a communication "that is not itself a collection attempt, but that aims to make [] such an attempt more likely to succeed, is one that has the requisite connection." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). Therefore, "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Id.* The Sixth Circuit in *Grden* adopted and expounded on the opinion of the Seventh Circuit in *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010), which had reached the same conclusion. The Third Circuit has also expressly approved this analysis of the Sixth and Seventh

21

Circuits. *Simon v. FIA Card Services, N.A.*, 732 F.3d 259, 265-67 (3d Cir. 2013). Congress acted deliberately in using the phrase "in connection with the collection of any debt" so as to not limit its scope to direct collection attempts alone but instead to cover activities both directly and indirectly undertaken to collect a debt.[1]

The district court did not analyze this prevailing legal standard. Instead, the court made its decision on the incorrect basis that the verification was not an actual "attempt at debt collection." Appx. 22. Had the lower court apprised itself of the prevailing law, it would have recognized that its singular focus on whether the verification was an "attempt at debt collection" was the precise question that the federal courts have expressly rejected as determinative. Credit Control's verification of the disputed debt to TransUnion — and doing so in violation of § 1692e(8) —

---

[1] The FDCPA expressly encompasses both "direct" and "indirect" activity. The definition of "debt collector" includes "any person…who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See e.g. Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142 (9th Cir. 1998) (analyzing whether the defendant telegraph company's activities, not limited to delivering messages but also including a targeted marketing program to assist clients to collect their debts, were a "direct or indirect attempt to collect a debt, bringing [it] within the ambit of the FDCPA"). Similarly, the "term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). *See e.g. Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 n.5 (3d Cir. 2011) ("A communication…is not limited to specific requests for payment").

Appellate Case: 14-1164     Page: 32     Date Filed: 04/08/2014 Entry ID: 4142086

made its direct collection demands "more likely to succeed." Since one "animating purpose" of a debt collector's use of credit reporting is to apply pressure to induce payment, Credit Control's communication with TransUnion verifying the debt was undeniably undertaken in connection with its collection. *See e.g. Sullivan v. Equifax*, 2002 WL 799856, at *4 (E.D. Pa. Apr. 19, 2002) ("Because reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of § 1692e(8) can subject a debt collector to liability under the FDCPA"); *Blanks v. Ford Motor Credit*, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (same).

The source of the district court's error was not simply failing to apply the plain statutory language or the correct legal standard, but also its analysis that derived from another subsection of the FDCPA that did not employ the "in connection with" language.[2] The lower court relied on the reasoning of the district court in *Edeh*, 748 F. Supp. 2d at 1036, a case that was prosecuted by a pro se consumer and that concluded that FCRA verification was not an "attempt at debt collection." Appx. 22. But *Edeh* reached that

---

[2] Four provisions of the FDCPA are activated by the "in connection with the collection of a debt" threshold: 15 U.S.C. §§ 1692c, 1692d, 1692e, and 1692g(a).

23

conclusion in the context of whether the FCRA verification that occurred there violated 15 U.S.C. § 1692g(b). Section 1692g(b) requires a debt collector who receives a consumer's timely validation request pursuant to that section to "cease collection of the debt" until it obtains and mails to the consumer the required validation. Thus, the specific question in *Edeh* was whether providing FCRA verification to the CRA before the debt collector had sent the consumer § 1692g(b) validation information violated the mandate that it "cease collection of the debt."

Even assuming that *Edeh* was correct that providing a CRA with FCRA verification did not run afoul of the § 1692g(b) requirement to "cease collection of the debt," its application to § 1692e is misplaced. If the § 1692e "in connection with the collection of any debt" language were limited to actual collection or attempts to collect the debt, then *Edeh's* § 1692g(b) "cease collection of the debt" analysis might have been pertinent. But the federal courts have given effect to Congress's choice of different and broader language in § 1692e to conclude that conduct that seeks payment directly as well as conduct that aids collection by making attempts to induce payment "more likely to succeed" is subject to § 1692e. *Edeh's* § 1692g(b) interpretation cannot and does not inform the scope of § 1692e.

24

The lower court's error in holding that Credit Control's verification of the disputed debt to the credit bureau was not undertaken in connection with its collection of that debt is patent. The conclusion is incorrect based on both the reasoning that the court employed as well as the analyses that it omitted. The ruling must be reversed.

## II. CREDIT CONTROL'S FAILURE TO DISCLOSE THAT IT KNEW THAT THE DEBT WAS DISPUTED WAS A VIOLATION OF 15 U.S.C. § 1692e(8)

### A. Section 1692e(8) Unambiguously Required Credit Control to Disclose the Debt's Known Disputed Status to TransUnion

Section 1692e(8) is clear, and the law applying it is established: "[T]he plain language of § 1692e(8) requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This 'knows or should know' standard requires no notification by the consumer, written or oral, and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is acquired." *Brady v. Credit Recovery Co.*, *Inc.*, 160 F.3d 64, 67 (1st Cir. 1998) (internal citation omitted). Accordingly, this Court has confirmed that any debt collector communicating credit information about a consumer "must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt."

25

*Wilhelm*, 519 F.3d at 418. Section 1692e(8) is written specifically with credit reporting in mind, as also was confirmed by this Court in *Wilhelm*, quoting from the Federal Trade Commission's FDCPA Staff Commentary: "1. Disputed debt. If a debt collector knows that a debt is disputed by the consumer ... *and reports it to a credit bureau*, he must report it as disputed." *Id*. (emphasis added by the Court).

The district court neither took exception to this jurisprudence nor applied it. Nevertheless, the facts as alleged establish the elements of Credit Control's § 1692e(8) violation: it had actual notice of the CRA dispute that Ms. McIvor had settled the debt with Progressive; it communicated to TransUnion Ms. McIvor's "credit information" and continued to assert that the debt was still owing and remained in collection; and it did not tell TransUnion that it knew that this disputed debt was disputed. The Amended Complaint therefore states a straightforward and unambiguous claim for Credit Control's violation of § 1692e(8).

**B.** ***Wilhelm* Required the District Court to Sustain the Section 1692e(8) Claim Regardless Whether It Believed the Failure to Disclose Here Was Sufficiently Important or Material**

Because a "district court ha[s] no power to replace governing circuit law with its own view," *Xiong v. State*, 195 F.3d 424, 426 (8th Cir. 1999), the court below had no license to depart from this Court's teaching in

26

*Wilhelm* that the very disclosure violation at issue here — a debt collector's failure to disclose the fact that a debt is disputed — is "always material." In *Wilhelm* the consumer appealed from a summary judgment dismissing his claims that the debt collectors violated § 1692e(8) when they did not update the disputed status to the CRAs. This Court held that, consistent with the position taken by the FTC in its FDCPA Staff Commentary, the defendants had no affirmative obligation to proactively update the newly learned information based on the plain reading of the FDCPA:

> Subsection 1692e(8) applies to the "communicating" of "credit information." "Communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." § 1692a(2). Reading these provisions together, as we must, the relevance of the portion of § 1692e(8) on which Wilhelm relies — "including the failure to communicate that a disputed debt is disputed" — is rooted in the basic fraud law principle that, if a debt collector *elects* to communicate "credit information" about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt.

*Id.* (emphasis in original).

Here, Credit Control failed to disclose the debt's disputed status under the circumstances described by *Wilhelm* when the omission of that information "is always material": once Credit Control knew of the dispute at a time when it was already communicating with TransUnion about the debt. No doubt the district court truly did not understand the vital and particularly

27

material role that the § 1692e(8) disclosure plays in conjunction with the FCRA and the credit scoring model that TransUnion uses to neutralize a tradeline that the furnisher — not the consumer — informs the CRA is disputed. But that lack of knowledge is still no justification for the lower court "to replace governing circuit law with its own view." *Wilhelm* establishes the law of this Circuit that under § 1692e(8) it is "always material…that the consumer has disputed a particular debt," and the district court's holding rejecting that view is blatantly in error.

Congress understood the significance of the § 1692e(8) disclosure that it was requiring. That the district court did not is of no consequence in the face of such Congressional action. The Fourth Circuit recently so held when it reversed the decision of a district court that had excused a debt collector's failure to make a required disclosure because it too had concluded that the failure to provide the required information was not a "material" FDCPA violation. *Warren v. Sessoms & Rogers*, 676 F.3d 365 (4th Cir. 2012). In *Warren* the subject disclosure was also codified under § 1692e: the § 1692e(11) requirement that after "the initial written communication with the consumer," the debt collector must "disclose in subsequent communications that the communication is from a debt collector." The debt collector there failed to provide that disclosure in a follow-up telephone message to the

28

consumer, but the district court held that the omission was not "material" because it believed that the consumer knew from earlier communications that the caller was a debt collector. The Fourth Circuit reversed, holding, in effect as in *Wilhelm*, that the fact that Congress expressly mandated the disclosure eliminated any possibility that its omission was not material or actionable:

> Generally, § 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e also provides a non-exhaustive list of "conduct" that satisfies this general prohibition.
>
> ****
>
> Warren's allegations, however, do not involve a *false representation*, or any affirmative representation for that matter. Rather, as described above, Warren complains about conduct that involves a "failure to disclose" "that the communication," the February 2009 phone message, was "from a debt collector." The statute expressly prohibits this exact *omission* by requiring debt collectors to disclose their status in every communication with a consumer. Accordingly, whether a materiality requirement attaches to other violations of § 1692e has no impact on Warren's allegations that the defendants violated § 1692e(11). The district court thus erred in concluding that Warren failed to allege a violation of § 1692e(11).

676 F.3d at 374 (emphasis in original, internal citations omitted).

The error committed by the district court here is indistinguishable from the error identified in *Warren*. Once Congress has enacted the mandate that a debt collector disclose certain information, *Wilhelm* and *Warren* both instruct that a judge is not free to relieve that debt collector from complying with that

29

mandate because the disclosure is deemed unimportant or immaterial. The materiality ruling below is diametrically at odds with the teaching of both *Wilhelm* and *Warren*, the basis for which is firmly grounded in American Constitutional principles that do not permit the federal judiciary to substitute its judgment for the express policy decisions made by Congress. *See e.g. Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 565 (1980) ("judges are not accredited to supersede Congress…by embellishing upon the regulatory scheme"); *Lower Brule Sioux Tribe of South Dakota v. U.S.*, 712 F.2d 349, 355 (8th Cir. 1983) ("when legislative intent is clearly expressed, it is not the function of the courts to question the wisdom of Congressional policy"). The district court's ruling substituted its view of § 1692e(8) for the judgment reached by both Congress and this Court and accordingly cannot stand.[3]

---

[3] This Court has not yet joined those jurisdictions that have held that § 1692e generally includes an unwritten materiality element. *See e.g. Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033-34 (9th Cir. 2010); *but see United States v. Wells*, 519 U.S. 482, 490 (1997) ("Nowhere does [the statute] further say that a material fact must be the subject of the false statement or so much as mention materiality. To the contrary, its terms cover 'any' false statement that meets the other requirements in the statute, and the term 'false statement' carries no general suggestion of influential significance.") As in *Warren*, deciding here whether § 1692e incorporates a materiality element is an academic issue when it comes to the specific § 1692e(8) disclosure violation at issue because the omission is *always* material as a matter of law and, as discussed below, as a matter of fact as well.

Appellate Case: 14-1164    Page: 40    Date Filed: 04/08/2014 Entry ID: 4142086

### C. Ms. McIvor Properly Alleged That Credit Control's Failure to Disclose the Debt's Disputed Status Adversely, Deceptively, and Materially Altered Her Credit Report and its Effect

The Amended Complaint alleges that Credit Control violated § 1692e(8) by not disclosing to TransUnion the known disputed status of the debt, that therefore TransUnion did not include in Ms. McIvor's credit report any indication that the debt was disputed, and that the resulting consequences included impairing Ms. McIvor's ability to obtain credit. Appx. 10-11. The district court's ruling that the § 1692e(8) disclosure omission was not deceptive or material is simply a refusal to accept the truth of these allegations. The Amended Complaint unequivocally alleges that Credit Control's § 1692e(8) violation misled TransUnion and as a result adversely impacted and impaired Ms. McIvor's creditworthiness, and the district court had no authority or basis to reject those allegations under Fed. R. Civ. P. 12.

Ms. McIvor was able to allege that Credit Control's § 1692e(8) violation impaired her ability to obtain credit because certain credit scoring models used by CRAs and others eliminate from their scoring calculation any debt or other tradeline which the furnisher reports as disputed by the consumer. Those scoring models that purge disputed tradelines do so only if the furnisher, not the consumer, reports that the information is disputed.

31

Federal Trade Commission and Federal Reserve Board, *Report To Congress On The Fair Credit Reporting Act Dispute Resolution Process*, at 22 n.139 (2006).[4]

TransUnion is one of those CRAs that neutralize a furnisher-reported disputed tradeline in their credit scoring models and would have done so here had Credit Control not violated its § 1692e(8) obligation. This same situation with the resulting reduction in the consumer's TransUnion credit score as a result of the debt collector omitting the § 1692e(8) disclosure was also an allegation in *Wesley v. Cavalry Investments, LLC*, 2006 WL 1285020, at *1 (E.D. Pa. May 9, 2006), a case that is squarely on point and mirrors this case in every substantive and procedural respect, except that the court there properly denied the defendant's motion to dismiss and permitted the consumer the opportunity to prove her allegations.

The "smoking gun" evidence — that TransUnion is among those CRAs that eliminate from their scoring calculation any tradeline which the furnisher reports as disputed and that therefore also establishes the deceptive, misleading, and material nature of Credit Control's § 1692e(8) violation — is a matter of public record in *Saunders v. Branch Banking and*

---

[4] *Available at* http://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-and-board-governors-federal-reserve-system-report-congress-fair-credit/p044808fcradisputeprocessreporttocongress.pdf.

Appellate Case: 14-1164    Page: 42    Date Filed: 04/08/2014 Entry ID: 4142086

*Trust Co. of Virginia*, 526 F.3d 142 (4th Cir. 2008). The furnisher in

*Saunders* advanced essentially the same unfounded contention that Credit

Control made "that a furnisher's reporting of an ongoing dispute of a debt is

superfluous once a consumer has filed a dispute with any CRA." 526 F.3d at

150. The Fourth Circuit debunked that argument by citing the evidence in

that case that notwithstanding having received notice directly from the

consumer disputing the debt, "CRAs do not consider the furnisher's

reporting of a dispute superfluous. For instance, when a furnisher responds

to a dispute verification form and relates an ongoing dispute, Trans Union

records the dispute in the credit report and does not include the derogatory

information in assessing the credit score." *Id.*

     *Saunders* establishes beyond any doubt — and certainly sufficiently

for purposes of Fed. R. Civ. P. 12 — the effect of Credit Control's

§ 1692e(8) violation. The omission of the dispute notation misled and

deceived TransUnion, who did not record the tradeline as disputed in Ms.

McIvor's credit report as it would have done had Credit Control complied

with § 1692e(8). The impact of that omission on Ms. McIvor personally was

that TransUnion factored the Progressive debt as a negative component into

her credit score, and Ms. McIvor was then confronted with the extortionate

choice to re-pay the settled debt or suffer the consequences of a lower credit

33

score and continue to have her ability to obtain credit impaired. The facts in this case replicate collection abuses that have demonstrated over the years that credit reporting is a "powerful tool designed, in part, to wrench compliance with payment terms from" debtors and dramatically show that Credit Control's misconduct was a misleading, deceptive, significant, and material violation of the FDCPA.

One extraordinary paradox flowing from the lower court's ruling is that Congress added § 1692e(8) to the FDCPA purposely to be certain that debt collectors would provide CRAs with the very information which Credit Control withheld from TransUnion, so that consumers such as Ms. McIvor would have the privately-enforceable remedies that the FDCPA provides to redress such noncompliance. All furnishers are subject to the slightly different but largely parallel FCRA counterpart to FDCPA § 1692e(8) that requires disclosure of the disputed status of any tradeline that they report to a CRA: "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3). However, this FCRA provision is

Appellate Case: 14-1164    Page: 44    Date Filed: 04/08/2014 Entry ID: 4142086

enforceable only by designated federal and state agencies and officials and not by aggrieved consumers. 15 U.S.C. § 1681s-2(c) and (d).

Accordingly, Congress took aim at debt collectors to compel them to disclose to CRAs known disputed debts as disputed — and added a private right of action to enforce and strengthen compliance that it omitted from the FCRA regarding furnishers in general. In light of these special Congressional efforts directed at debt collectors as one subset of the furnisher community, the district court's refusal to allow enforcement of § 1692e(8) here presents an especially egregious contradiction of the plain language of the FDCPA.

Congress focused on debt collectors for special credit reporting treatment because debt collectors comprise the one group of furnishers whose own narrow economic interests would motivate them to game the credit reporting system for their own profit at the expense of consumers and concomitantly the remainder of the consumer financial services industry. Indeed, Congress enacted the FDCPA with an explanation that explains its special handling for debt collectors who furnish credit information to CRAs: "the FDCPA distinguishes between 'debt collectors' and 'creditors.' Creditors, 'who generally are restrained by the desire to protect their good will when collecting past due accounts,' are not covered by the Act. Instead,

35

the Act is aimed at debt collectors, who may have 'no future contact with the consumer and often are unconcerned with the consumer's opinion of them.'" *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003), quoting from S. Rep. 95–382 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695.

Another condition which is peculiar to third party debt collectors, of which Congress was well aware when it enacted § 1692e(8), is that debt collectors typically have no first-hand knowledge of the accuracy of the information they furnish since the debts which they are collecting were created by an underlying creditor and became delinquent before the debt collector obtained the account. *Schlosser*, 323 F.3d at 536 ("the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not"). As a result debt collectors furnish credit information to CRAs by relying merely on the information they received from a remote creditor. Then they deny the consumer's own first hand account of the dispute and summarily verify the debt to the CRA based on the same information that they received from the creditor and that is being disputed. The following assessment from a district judge rejecting a debt collector's post-trial motion for relief from the jury's verdict illustrates this unfortunate problem:

> Under the defendant's system, when a consumer disputes a debt,
> 95% of such disputes are checked by a computer merely making

36

sure the disputed debt is the same as the information defendant has in its system already. Upon such review, defendant then asserts the debt is valid each and every time. As plaintiff points out, defendant receives about 8,000 disputes per week and for 95% of those disputes, defendant checks its own records as a means of validating the debt, although the debts are all purchased, at discount, from various creditors who have been unable to collect on them. The jury determined defendant's conduct to be reprehensible. This court will not set that finding aside, as there is more than sufficient evidence to support such a finding.

*Brim v. Midland Credit Management*, *Inc*., 795 F. Supp. 2d 1255, 1263-64

(N.D. Ala. 2011).

Congress's decision to focus on credit reporting by debt collectors in the FDCPA is compelling and certainly justified. Debt collectors generate a hugely disproportionate number of the disputes received by the Big Three CRAs, accounting for nearly forty percent of all credit reporting disputes even though they only supply thirteen percent of the tradelines.[5]

Congress imposed a targeted credit reporting protocol in another Consumer Credit Protection Act title similarly involving the collection of disputed debts. Part D of the Truth in Lending Act [15 U.S.C. §§ 1601-1667e (TILA)] circumscribes the credit reporting activities of credit card issuers and other "open-ended credit" creditors who receive a "billing error"

_____

[5] Consumer Financial Protection Bureau, *Key Dimensions and Processes in the U.S. Credit Reporting System: A Review Of How The Nation's Largest Credit Bureaus Manage Consumer Data*, at 14 and 29 (2012), *available at* www.consumerfinance.gov/reports/key-dimensions-and-processes-in-the-u-s-credit-reporting-system.

37

notice from a consumer. *See* 15 U.S.C. §§ 1666 and 1666a. If that creditor receives a written notice that the consumer continues to dispute the debt after the creditor's attempt to resolve the "billing error," the creditor is then precluded from thereafter reporting the disputed amount to a CRA "unless the creditor also reports that the amount is in dispute." 15 U.S.C. § 1666a(b).[6] A violation of this billing error credit reporting protocol is also privately enforceable by an aggrieved consumer. 15 U.S.C. § 1640; *see Saunders v. Ameritrust of Cincinnati*, 587 F. Supp. 896, 899 (D. Ohio 1984) ("an obligor has a cause of action against a creditor" for a violation of 15 U.S.C. § 1666a). The district court's ruling is at odds with and undermines the clearly stated Congressional judgment that credit reporting in connection with debt collection lends itself to misuse and abuse.

Congress understood that one hallmark of a properly functioning credit reporting system is the assurance that CRAs receive the critical information that they must have to perform their credit reporting duties. The CRA is the credit reporting system's "gatekeeper" [*Chiang v. MBNA*, 620 F.3d 30, 30 (1st Cir. 2010)], charged by Congress with exercising the "grave responsibilities" imparted by the FCRA. 15 U.S.C. § 1681(a)(4). Section

---

[6] The creditor is barred entirely from reporting the disputed amount to a CRA initially while it is investigating and correcting the billing error. 15 U.S.C. § 1666a(a).

38

1692e(8) represents one small part of the integrated credit reporting system on which Congress has determined the entire national "banking system is dependent." 15 U.S.C. § 1681(a)(1). Section 1692e(8) is *in pari materia* with the essential FCRA requirement, which the lower court here did not mention, that once a CRA learns from a furnisher (and not the consumer) "that information regarding a consumer [which] was furnished to the agency is disputed by the consumer, the agency shall indicate that fact in each consumer report that includes the disputed information." 15 U.S.C. § 1681c(f).

The decision by TransUnion to eliminate a furnisher-designated disputed tradeline from a credit score is not FCRA-driven but is the result of the choice of a consumer credit industry participant made in an open, free, and informed marketplace once receiving the enabling information. Congress did not tell TransUnion to neutralize the effect of a qualifying disputed debt; the CRA made that decision itself based on its evaluation of the reliability of such a tradeline and the weight it deserves.

The consumer financial services economy is dependent on the maintenance and dissemination of accurate, complete, and relevant information. Congress adopted the FCRA with the express purpose to enable credit grantors, employers, and others to be in the best position to make

39

reliable lending and other business decisions on the basis of accurate information. 15 U.S.C. § 1681. In addition, "Congress enacted the Truth in Lending Act in part because it believed consumers would individually benefit not only from the more informed use of credit, but also from heightened competition which would result from more knowledgeable credit shopping." *Till v. SCS Credit Corp.*, 541 U.S. 465, 482 (2004) (footnote, citation, and quotation omitted). The Supreme Court stated the guiding principle of this Congressional philosophy over 40 years ago: "[B]lind economic activity is inconsistent with the efficient functioning of a free economic system such as ours." *Mourning v. Family Publication Serv.*, *Inc.*, 411 U.S. 356, 364 (1973).

Notwithstanding Congress's multiple efforts to support this information-dependent economy, Credit Control violated § 1692e(8) and thereby caused TransUnion to include incomplete information in Ms. McIvor's credit report, information that by definition is also inaccurate and misleading. *See e.g. Henson v. CSC Credit Services*, 29 F.3d 280, 283 (7th Cir. 1994) (inaccurate information includes misleading and incomplete information). The adverse consequences of that violation are not limited to TransUnion's use of its credit scoring model that penalized Ms. McIvor for

Appellate Case: 14-1164    Page: 50    Date Filed: 04/08/2014 Entry ID: 4142086

this omission — and allowed Credit Control to continue to use the credit report as a collection tool.

Not all credit grantors or consumer report users employ a credit scoring system. Instead, creditors and others still use human judgment to evaluate consumer reports and make the important resulting decisions.[7] Anyone viewing Ms. McIvor's credit report or the report of any other consumer regarding whom the furnisher omitted the dispute disclosure would also be deprived of knowing that important item of information that Congress has determined — and human experience has confirmed — is necessary to help understand and evaluate a consumer report.

Credit Control's § 1692e(8) violation had another adverse consequence because it occurred in the context of a reinvestigation conducted by a CRA under the FCRA. A proper investigation response by Credit Control to TransUnion with the dispute disclosure required by § 1692e(8) would have required TransUnion to modify the tradeline under 15 U.S.C. § 1681i(a)(5)(A) to add the dispute designation because the absence of the dispute status from Credit Control's earlier reporting would then be legally incomplete and require updating under 15 U.S.C. § 1681c(f).

_____

[7] A credit application evaluation that is not made under a credit scoring system is deemed to be made under a "judgmental system." 12 C.F.R. § 1002.2(t).

Appellate Case: 14-1164    Page: 51    Date Filed: 04/08/2014 Entry ID: 4142086

Then 15 U.S.C. § 1681i(a)(5)(D) would be activated and require Credit Control to provide notice of the current, complete disputed status of the debt to any other "nationwide" CRA to whom Credit Control had reported the debt. In addition, 15 U.S.C. § 1681s-2(b) would require Credit Control to notify any other CRA, nationwide or otherwise, to whom it had reported the Progressive debt of the dispute in order to make that reporting complete. 15 U.S.C. § 1681s-2(b)(1)(D).

This scenario illustrates the damage to the normal functioning of the credit reporting system that flows from the district court ruling. It was with regard to these notification protocols to other CRAs that the Third Circuit exposed the error in the lower court's hypothesis that it could dispense with furnisher dispute notification because "TransUnion already knew the debt was in dispute" from Ms. McIvor: "It may seem peculiar that FCRA compels a furnisher, who can only be formally notified of a dispute by a CRA, to then re-designate the account as disputed in its submission back to the same CRA, which of course already knows about the dispute, having been the initial recipient of notice from the consumer." *Seamans v. Temple University*, — F.3d —, 2014 WL 658401, at *10 n.11 (3d Cir. 2014). Only then would the notification protocols come into play.

Appellate Case: 14-1164     Page: 52     Date Filed: 04/08/2014 Entry ID: 4142086

The district court's ruling relieves debt collectors of their essential obligation to provide a CRA with complete and accurate information about the debts they are collecting and reporting. The Amended Complaint states a claim for relief that specifically made allegations that refute the court's belief that Credit Control's § 1692e(8) violation was not misleading, deceptive, and material: Credit Control manipulated TransUnion into omitting from Ms. McIvor's consumer report the dispute notation that would have neutralized the negative collection account in her credit score calculation, and thereby recruited TransUnion as its unwitting partner in using the credit reporting system to attempt to extract payment of a debt that she no longer owed. In addition, the ruling below opens the door for a series of other FCRA consequences, surely not contemplated by the court, that will result from excusing debt collectors from complying with § 1692e(8)'s unambiguous disclosure mandate. The ruling is wrong as to Ms. McIvor personally and destructive in its far-reaching unintended consequences.

## CONCLUSION

For the foregoing reasons, the judgment below should be reversed, with costs of appeal and reasonable attorneys fees awarded to Ms. McIvor, and this matter remanded for proceedings on the merits.

43

Respectfully submitted,

/s/ Richard J. Rubin
Richard J. Rubin
ATTORNEY AT LAW
1300 Canyon Road
Santa Fe, New Mexico  87501
(505) 983-4418


Jonathan L. R. Drewes
Bennett Hartz
DREWES LAW
1516 West Lake Street, Suite 300
Minneapolis, Minnesota  55408
(612) 285-3052


Joanne S. Faulkner
ATTORNEY AT LAW
123 Avon Street
New Haven, Connecticut  06511
(203) 772-0395


Deepak Gupta
GUPTA BECK PLLC
1625 Massachusetts Avenue, NW
Washington, DC 20036
(202) 470-3826


*Counsel for Appellant*

44

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*9,779*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: April 8, 2014            /s/ Richard J. Rubin
                                *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 8th day of April, 2014, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Ashley M. DeMinck
> Russell S. Ponessa
> HINSHAW & CULBERTSON
> 333 South Seventh Street Suite 2000
> Minneapolis, Minnesota 55402
> (612) 333-3434
>
> *Counsel for Appellee*

I further certify that the Brief of Appellant has been scanned for viruses using [Symantec Endpoint Protection], and according to the program is free of viruses.

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Appellant will be filed, via UPS Next Day Air, with the Clerk of the Court of the United States Court of Appeals for the Eighth Circuit in accordance with the Eighth Circuit Rules.

/s/ Richard J. Rubin
*Counsel for Appellant*
